**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                  NORTHERN DISTRICT OF CALIFORNIA

10

11   ANTONIO C. SIMONELLI,                         No. C 02-1107 JL

12                    Plaintiff,                    **ORDER**

13            v.

14   UNIVERSITY OF CALIFORNIA -
     BERKELEY, ET AL.,
15
                     Defendants.
16   _____/

17            Defendants briefed the issue whether Plaintiff must show intentional discrimination in

18   order to obtain damages under the Unruh Act. This Court concludes that, in an Unruh Act

19   claim premised on a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 et

20   seq., Plaintiff need not show intentional discrimination in order to obtain an award of

21   damages. The Court bases this conclusion on the decision by the U.S. Court of Appeals for

22   the Ninth Circuit in the *Lentini* case, which is precedent in this district until the Ninth Circuit

23   decides otherwise.

24            Plaintiff Anthony Simonelli brings claims under Title II of the ADA, §504 of the

25   Rehabilitation Act, and for damages under Cal. Civ. Code §52, the enforcement arm of the

26   Unruh Act, Cal. Civ. Code §51 *et seq.* He charges the University of California Boalt Hall

27   School of Law with failing to accommodate his low vision disability, specifically by not

28   providing him with enlarged text copies of his course reading assignments on a timely

     basis.

**United States District Court**
For the Northern District of California

1    Under the ADA alone, Plaintiff does not have to show intent to receive injunctive

2    relief, but in the case at bar, that is not what he is asking for. If he were bringing an ADA

3    claim alone, he would have to show intent to receive damages, e.g. for lost wages, medical

4    expenses and emotional distress. Similarly, under the Unruh Act alone, Plaintiff would have

5    to show intentional discrimination in order to obtain damages, under the California Supreme

6    Court decision in *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1175 (1991).

7    However, if Plaintiff shows a violation of the ADA, that is a *per se* violation of

8    California's Unruh Civil Rights Act, which Defendants argue requires a showing of

9    intentional discrimination by Defendants for Plaintiff to recover damages.

10                                                **ANALYSIS**

11   ***Presta v. Peninsula Corridor Joint Powers Board*, 16 F.Supp.2d 1134 (N.D.Cal.1998)**

12   A railroad passenger suffering from a chronic pain disorder, thoracic outlet

13   syndrome, that severely limits her mobility, sued Amtrak for treating her rudely and denying

14   her assistance boarding and disembarking from trains. She alleged violation of Title II of the

15   ADA, § 504 of the Rehabilitation Act and the Unruh Civil Rights Act. The district court, Hon.

16   Thelton Henderson, held that "in a claim for discrimination on the basis of disability brought

17   under the Unruh Act, a plaintiff need not prove that the defendant harbored discriminatory

18   intent." *Id.*

19   This short order was written in response to a dispute over jury instructions. The court

20   rejected defendant's instruction including, *inter alia*, "3. The discrimination was

21   unreasonable, arbitrary, or invidious." Plaintiff disputed the instruction, proposing her own

22   alternative instruction, arguing that she must only show that she "is a person with a

23   disability, and that Defendants denied her full and equal accommodations, advantages,

24   privileges, or services because of her disability."

25   The court adopted plaintiff's interpretation, finding that the ADA "guards against both

26   intentional discrimination and simple exclusion from services resulting not from intentional

27   discriminatory acts, both rather from inaction, thoughtlessness, or equal treatment when

28   particular accommodations are necessary." *Id.* at 1136. The court observed that sometimes

the most damaging instances of discrimination result from "benevolent inaction when action

1  is required." The court reasoned that such discrimination may only be fought by a statute,

2  such as the ADA, which prescribes liability without reference to an actor's intent. Since the

3  California legislature incorporated the full expanse of the ADA into the Unruh Act, it made

4  the Unruh Act such a statute as well.

5  ### *Lentini v. California Center for the Arts*, 370 F.3d 837 (9th Cir. 2004)

6  A quadriplegic woman who uses a wheelchair sued a performing arts center for

7  excluding her after her service dog made noise at two performances she attended. The

8  court reversed the trial court's finding that defendants did not intentionally discriminate, but

9  rejected the application of the California Supreme Court ruling in *Harris* that "a plaintiff

10  seeking to establish a case under the Unruh Act must plead and prove intentional

11  discrimination in public accommodations in violation of the terms of the act." *Harris v.*

12  *Capital Growth Investors XIV,* 52 Cal.3d at 1175. The court in *Lentini* held that intent was

13  not required, if the claim was premised on a violation of the ADA.

14  The court left open the possibility that intent might be required in Unruh Act suits

15  independent of the ADA (this could result in this case, arguably, if plaintiff fails to show a

16  violation of the ADA, but does show a violation of the Unruh Act).

17  The court in *Lentini* held that "regardless of whether *Harris* may continue to have

18  relevance to other Unruh Act suits, no showing of intentional discrimination is required

19  where the Unruh Act violation is premised on an ADA violation. This result is mandated by

20  the plain meaning of the Unruh Act's language, which that a violation of the ADA is, *per se*,

21  a violation of the Unruh Act. . . "Because the Unruh Act has adopted the full expanse of the

22  ADA, it must follow, that the same standards for liability apply under both Acts." *Id.* at 847,

23  citing *Presta*, 16 F.Supp.2d at 1135. The court concluded: "Therefore, we affirm the district

24  court's conclusion that, insofar as the appellants violated the ADA, a showing of intentional

25  discrimination was not required in order to award damages under the Unruh Act." *Id.*

26  ### *Wilson v. Haria and Gogri Corp.,* 479 F.Supp.2d 1127 (E.D.Cal. 2007)

27  Judge Karlton recently analyzed very thoroughly the tension between the state law

28  requirements for intent to receive an award of damages under the Unruh Act and the

requirements under the ADA. In that case a disabled patron sued a restaurant for

**United States District Court**
For the Northern District of California

1   architectural barriers, claiming it violated Title III of the ADA, the California Disabled

2   Persons Act ("DPA") and the Unruh Act. The patron moved for summary judgment, seeking

3   injunctive relief under the ADA and damages under the Unruh Act. The district court

4   granted the motion and awarded monetary relief in the sum of $52,000 (13 violations times

5   the statutory minimum of $4,000 per violation of the Unruh Act).

6       The court roundly rejected the California court of appeal's decision in *Gunther v. Lin*,

7   144 Cal.App.4th 223 (2006), in which the court had held that in order to obtain damages

8   under the Unruh Act, a plaintiff also asserting a claim under the ADA must demonstrate

9   that a defendant had an intent to discriminate. The court observed that the California

10  Supreme Court had not ruled on the specific issue (whether intent was required in an

11  Unruh Act claim premised on an ADA violation).

12      The court in *Wilson* also rejected the *Gunther* decision because it directly

13  contradicted the Ninth Circuit decision in *Lentini*. Judge Karlton observed that "it is clear

14  that federal courts are free to disregard the decisions of intermediate state courts where

15  there is "convincing evidence" that the state's highest court would decide differently. *In re*

16  *Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002). Here, there is convincing evidence suggesting

17  that the decision is not likely the law of the state of California." *Wilson*, 479 F.Supp.2d 1127

18  at 1136.

19      In a footnote, the court theorizes that the California Supreme Court only denied

20  review because there is not yet an appellate district split on the issue, and therefore the

21  denial of review does not signal the California Supreme Court's approval of the decision. *Id.*

22

23                  **This Court should not dismiss Plaintiff's California claims**

24      Judge Karlton concluded that there was no novel or complex issue of state law

25  sufficient to justify declining supplemental jurisdiction over claims under California law and

26  remanding those claims to state court. Furthermore, the defendants in the *Wilson* case had

27  not moved to dismiss on that basis. In the case at bar, Defendants in their brief argue in the

28  alternative for dismissal of the supplemental state law claims, literally on the eve of trial.

    This Court finds that, five years after the complaint was filed, and three years after the

**United States District Court**

For the Northern District of California

1  Ninth Circuit ruling in the *Lentini* case, for this Court to dismiss Plaintiff's supplemental

2  claims under California law would be manifestly unfair.

3       A number of district courts, many in the Southern District of California, have issued

4  unpublished decisions declining supplemental jurisdiction and remanding on this basis.

5  See, e.g., the *Pacific Cross* case, upon which Defendants rely:

6       "Essentially, the California state courts, through the *Gunther* case, which the
     California Supreme Court has declined to hear, has told the federal courts, "you got

7       it wrong," when *Lentini* was decided. The "it" in Lentini was an interpretation of
     California state law and an attempt to reconcile the Unruh Act's remedies and

8       sanctions for intentional discrimination, when liability is premised on an unintentional
     violation of the ADA, with the ADA itself, which does not require proof of intentional

9       discrimination. Given considerations of comity and the other "compelling reasons"
     articulated above, "the ball" is now in the California courts on this conundrum. The

10      motion to dismiss the supplemental state claims is GRANTED. The court
     DISMISSES without prejudice all of Plaintiff's state claims pursuant to 28 U.S .C. §

11      1367(c)(1)." *Cross v. Pacific Coast Plaza Investments, L.P.* L 951772, *4 -6
     (S.D.Cal.,2007)

12

13      This Court finds none of these cases to be persuasive, especially in view of the

14 policy positions expressed in *Presta* and *Wilson* that the California legislature intended the

15 Unruh Act to afford to victims of disability discrimination the full enforcement available in

16 California Civil Code section 52, whether the discrimination is intentional or unintentional.

17 *Wilson*, 479 F.Supp.2d at 1137.

18      As Judge Henderson recognized in *Presta*, a Title II case, disability discrimination is

19 simply different than other forms of discrimination. "Combating discrimination as it effects

20 persons with disabilities requires recognizing . . . that often the most damaging instances in

21 which rights of persons with disabilities are denied come not as the result of malice or

22 discriminatory intent, but rather from benevolent inaction when action is required." *Id.* at

23 1138-1139, quoting *Presta*, 16 F.Supp.2d at 1136.

24      **No meaningful distinction between Title II and Title III claims**

25      Defendants also raise the issue that Plaintiff brings his ADA claim under Title II,

26 rather than Title III, as in the *Lentini* and *Wilson* cases. The plaintiff in *Presta* also sought

27 relief under Title II, and the court held that she did not have to prove intentional

28 discrimination to receive an award for damages. This Court finds that for this purpose Title

II versus Title III is a distinction without a difference. The court in *Lentini* held that a

**United States District Court**

For the Northern District of California

1   violation of the ADA is *per se* a violation of the Unruh Act, under California law, and that a

2   plaintiff bringing a claim under the Unruh Act, premised on a violation of the ADA, does not

3   need to show intentional discrimination in order to obtain damages:

4       "We find that, regardless of whether Harris may continue to have relevance to other
        Unruh Act suits, no showing of intentional discrimination is required where the Unruh
5       Act violation is premised on an ADA violation. This result is mandated by the plain
        meaning of the Unruh Act's language, which states that a violation of the ADA is, per
6       se, a violation of the Unruh Act. See Biehl v. C.I.R., 351 F.3d 982, 986 (9th Cir.2003)
        ("Statutory interpretation begins with the plain meaning of the statute's language."
7       (citation and quotation marks omitted)). "Because the Unruh Act has adopted the full
        expanse of the ADA, it must follow, that the same standards for liability apply under
8       both Acts." Presta, 16 F.Supp.2d at 1135. Therefore, we affirm the district court's
        conclusion that, insofar as the appellants violated the ADA, a showing of intentional
9       discrimination was not required in order to award damages under the Unruh Act."

10

11      *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, *847 (9th Cir.
        2004)

12          The court did not say "insofar as the appellants violated Title III of the ADA," it said

13  "Insofar as the appellants violated the ADA." The court did not distinguish between the

14  types of cases and this Court declines to do so as well. This Court can only interpret the

15  plain language of the decision to mean what it says.

16                                      **Order**

17          Accordingly, the jury instructions and the verdict form in this case shall reflect the

18  Ninth Circuit decision in *Lentini* that a Plaintiff who brings an Unruh Act claim for disability

19  discrimination premised on a claim under the Americans with Disabilities Act need not show

20  intentional discrimination to obtain an award of monetary damages.

21          IT IS SO ORDERED.

22          DATED: November 6, 2007

23

24                                      _____/s_____

25                                          James Larson
                                            Chief Magistrate Judge
26

27  G:\JLALL\CHAMBERS\CASES\CIVIL\02-1107\order-intent.wpd

28