UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO C. SIMONELLI, | No. C 02-1107 JL |
| Plaintiff, | **DISMISSAL OF INDIVIDUAL DEFENDANTS JOHN DWYER AND VICTORIA ORTIZ** |
| v. | |
| UNIVERSITY OF CALIFORNIA - BERKELEY, ET AL., | |
| Defendants. | |

**Introduction**

Defendants John Dwyer and Victoria Ortiz move to dismiss Plaintiff's cause of action pursuant to California's Unruh Civil Rights Act, Cal.Civ. Code §51 et seq. They contend that Plaintiff fails to make a prima facie case that either of them intentionally or even unintentionally discriminated against him on the basis of his disability.

Viewing the evidence in the light most favorable to Plaintiff and drawing all factual inferences in his favor, the Court hereby grants the motion.

**ANALYSIS**

**Standard for JMOL**

A motion for judgment as a matter of law (JMOL) tests the sufficiency of the evidence offered in support of the other party's claim or defense. FRCP 50 (a)(1). If a party has been fully heard on an issue during a jury trial and the court finds that a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FRCP 50 (a)(1).

The court applies the same standard when ruling on a JMOL motion as on a motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). As the Court held in *Trigueros v. Southwest Airlines*, a summary judgment motion in an Unruh Act case is governed by the burden shifting provisions established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* test, the plaintiff has the initial burden of making a prima facie case of discrimination. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-88 (1989); see also *McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 577, 584-585 (S.D. Tex. 2005) (holding that a plaintiff establishes a prima facie case of disability discrimination by showing that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class). Once the plaintiff has proven the elements of a prima facie case, the burden of production shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the challenged action. See *McDonnell Douglas v. Green, supra*, 411 U.S. at 802-03. If the defendants articulate a proper basis for their conduct, the burden shifts back to the plaintiff in the third stage of the analysis to prove that the defendant's proffered reasons were simply a pretext for discrimination. *Id.* at 804-05. Notwithstanding the shifting burden of production, the plaintiff retains the ultimate burden of proving that the challenged action was the result of intentional discrimination based on impermissible motive. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993)

(refining the *McDonnell Douglas* test so that plaintiffs must retain the ultimate burden of proving actual discrimination by the defendant). *Trigueros*, 2007 WL 2502151 *3 (S.D.Cal. 2007)

### 1. To Prevail On An Unruh Act Claim, Plaintiff Must Show Intentional Discrimination Through Willful, Affirmative Misconduct

Citing the California Supreme Court's decision in *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991), this Court has already ruled that in order for Plaintiff to prevail on his Unruh Act claims (not premised on an Americans with Disabilities Act ("ADA") violation), he must prove intentional discrimination.  See Order at p. 2, filed: November 7, 2007, Document 232.  As the court in *Harris* described, "intentional discrimination" in this context means "willful, affirmative misconduct."  The court rejected a disparate impact test for discrimination under the Unruh Act. The court examined the legislative history of the Unruh Act, signed in 1959, and its predecessor in 1897, and observed that these were long before the disparate impact theory was even recognized by the federal courts. The court looked at section 52 in particular, which states:

> "Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction, or restriction on account of sex, color, race . . . contrary to the provisions of section 51 . . ., is liable for each and every such offense for the actual damages, and such amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than two hundred fifty dollars ($ 250), and such attorney's fees as may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 . . . .

The court from the language of the statute derived its conclusion that the Unruh Act required intentional discrimination, specifically willful, affirmative misconduct, to justify an award of damages:

> "Several aspects of the foregoing language point to an emphasis on intentional discrimination. The references to "aiding" and "inciting" denial of access to public accommodations, to making discriminations and restrictions, and to the commission of an "offense" imply willful, affirmative misconduct on the part of those who violate the Act. Moreover, the damages provision allowing for an exemplary award of up to treble the actual damages suffered with a stated minimum amount reveals a desire to punish intentional and morally offensive conduct.

*Harris v. Capital Growth Investors XIV, supra*, 52 Cal.3d at 1175 (citations omitted).

This Court has also ruled that where his Unruh Act claim is premised on a violation of the ADA, based on the Ninth Circuit's holding in *Lentini v. California Center for the Arts*, 370 F.3d 837 (9th Cir. 2004), Plaintiff need not prove intentional discrimination. However, the claims against Dwyer and Ortiz are not premised on the ADA; no ADA claims are pled against them.   See Order at p. 2, filed November 7, 2007, Docket Number 232.

**1.    There is Insufficient Evidence for A Reasonable Jury to Conclude that Dean Ortiz or Dwyer Discriminated Against Plaintiff On the Basis of His Disability**

**A.    DEAN DWYER**

As Dwyer testified, his role as Dean of the Boalt Hall School of Law necessarily required a great deal of delegation of duties to the more than150 people employed at Boalt and to others at the University of California, Berkeley.  He utilized the skills, time and commitment of others to handle many of the day-to-day operations of the Law School.

With regard to the specific issues in this case, he relied on the Disabled Students Program ("DSP") to establish Plaintiff's disability accommodations.  When Plaintiff complained about the timeliness of his receipt of those accommodations, Dwyer participated in at least one meeting and was satisfied with the Law School's response, namely authorizing Ms. Parrish to step in and assist with enlarging hard copy text as a "stopgap" measure.  There is no evidence whatsoever that Dwyer believed that any difficulties with accommodations were not being remedied.  Indeed, as set forth above, Plaintiff himself was, and still is, convinced that DSP's Jim Gammon and the Law School's Holly Parrish were in good faith trying to deliver accommodations to him in a timely manner. Dwyer's reliance on these people cannot be said to be discriminatory in any way.

With regard to Plaintiff transferring to another law school, there is a non-material dispute in part of the evidence, i.e., what Dwyer promised to do for Plaintiff.  Dwyer testified that though he did not have a specific recollection of the incident, his custom would have been to say, "I'll look into it," in order not to embarrass the student in front of his/her peers.

Plaintiff testified that Dwyer said that Plaintiff should pick three law schools out of the 180 in the country and Dwyer would "make some calls." There is no dispute, however, that Dwyer had no basis from which to judge Plaintiff's school work, nor is there any dispute that Dwyer did not have the ability to call in favors from the deans of others law schools. Plaintiff testified that the only basis for his belief that he might benefit from such action was a TV program addressing one such circumstance involving other schools in 1970.

Taking these facts in the light most favorable to Plaintiff, he cannot establish a *prima facie* case. He cannot show that Dwyer treated Plaintiff less favorably than he treated non-disabled students. Even if Plaintiff could establish a prima facie case, Dwyer's non-discriminatory explanation for not effectuating a transfer of Plaintiff to Yale, Harvard or Stanford: that he had no such influence or power, is undisputed. As a matter of law, the behavior attributed to Dwyer cannot be said to constitute even unintentional discrimination, much less satisfy Plaintiff's burden of proving willful, affirmative, misconduct.

**B. DEAN ORTIZ**

For much of the supposedly "negative" evidence about Dean Ortiz, no reasonable argument can be made that, even when the evidence is viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that Dean Ortiz discriminated against Plaintiff, either intentionally or unintentionally. Indeed, Plaintiff does not even establish a prima facie case. Dean Ortiz not allowing Plaintiff to interview twice as a 2L is not discrimination, and indeed it is not even evidence of disparate treatment. There is no evidence that Dean Ortiz applied a different rule to non-disabled students or any other students for that matter, and her nondiscriminatory explanation for this decision is undisputed. Likewise, the denial by Dean Ortiz of Plaintiff's request to switch his Torts class sections is not proof or even suggestive of disparate treatment or discrimination. Plaintiff does not set forth a prima facie case, and even if he did, Dean Ortiz's explanation that she does not let students switch sections in first year courses, is undisputed.

As with Dwyer, Dean Ortiz's reliance on the work of others to accommodate Plaintiff

cannot form the basis for a jury reasonably to conclude that she discriminated against Plaintiff.  Again, Plaintiff fails to show a prima facie case against this defendant, and if he could, he has not presented evidence that tends to show that the nondiscriminatory explanation is either false or a pretext for discrimination.

Even if Dean Ortiz did yell at Plaintiff in the Spring of 2002, it is undisputed that this conduct happened but one time, and that the gist of the supposed "yelling" was that Plaintiff should have gone to DSP, not Ms. Parrish, to coordinate the enlargement of his Haas School of Business course materials.  (Ms. Parrish testified that she would not have access to Business School books.)  There is no evidence to suggest that the alleged "yelling" was based on Plaintiff's disability. It consequently does not contribute to Plaintiff's establishment of a *prima facie* case.  Even if it did, Dean Ortiz's nondiscriminatory explanation that Plaintiff was too forceful with Ms. Parrish such that Dean Ortiz got involved and raised her voice remains unrebutted.  Plaintiff has presented no evidence that this explanation was a pretext or that the real reason for the action is disability discrimination.

Finally, the evidence concerning the decision by Dean Ortiz and Associate Dean Vetter that Plaintiff "must withdraw" from the Law School is also unavailing.  First, Plaintiff did not withdraw, so the question is whether the instruction that he "must" in Dean Vetter's letter (Exhibit 73) is a discriminatory act.  Even assuming for the sake of argument only that such an interference is reasonable and enough to establish a prima facie case, the legitimate, nondiscriminatory explanation for the "decision,"  that in the Deans' best pedagogical opinion Plaintiff would have benefitted from time off to complete the examinations from the courses he already took, is both undisputed and reasonable.  The letter states, "We have concluded that it is vital to your prospects for successful completion of your law studies that you adopt the course we outlined at our meeting," (Exh. 73 at p. 2) and that if Plaintiff did not withdraw, Plaintiff would be nine units behind as of the end of the Spring 2002 semester (Exh. 73 at ¶ 4-5), even assuming that he completed all of his spring 2002 courses on time.  The net effect of this evidence, viewing it in the light most favorable

to Plaintiff, is that Dean Ortiz participated in a decision that Plaintiff must withdraw, even though she did not have to authority to force him to sign the withdrawal paperwork. If this were enough to establish a prima facie case of disability discrimination, Plaintiff still cannot carry his burden of showing that the nondiscriminatory reasons for the "decision"—those set forth in Exhibit 73—were false or a pretext for disability discrimination.

**Conclusion and Order**

This Court concludes that Defendants John Dwyer and Victoria Ortiz are entitled to Judgment as a Matter of Law and dismissal from this case. Plaintiff fails to make a prima facie case that they discriminated against him, either intentionally or unintentionally, on the basis of his disability, under the California Unruh Civil Rights Act, Cal. Civ. Code §51 et seq. The case against these two defendants is hereby dismissed.

IT IS SO ORDERED.

DATED: November 15, 2007

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\02-1107\Dismiss-Individuals.wpd